## Case No. 12,048.

### ROSE v. HIMILI.

[Bee. 308.] [1]

District Court, D. South Carolina. April, 1805.[2]

PRIZE — FOREIGN CONDEMNATION — REGULATION MADE AFTER CAPTURE— RESTORATION.

A sentence of condemnation, founded upon a municipal regulation, which was not made till after the capture of the property on the high seas, shall not avail to prevent restitution of such property to the original owners, if it be brought within the jurisdiction of the courts of this country, of which those owners are citizens.

BEE, District Judge. The proceedings in this case are similar to those in the cause between the said parties, which was determined before me on the 6th of September last. [Case No. 12,047.] In the decree then delivered I stated that, although two separate libels had been filed, yet they had been considered as forming but one suit; and the parties agreed that all the evidence then produced, should be applied to both cases. But as new evidence has since been adduced, and which is contended on the part of the claimant to be final and conclusive, it has become necessary to reconsider the testimony as far as relates to the case now before the court. It is contended by the advocates for the actors that two points only are necessary to be considered: 1st. Whether the property libelled against is established by sufficient proof, to be the same that was seized on the high seas, and carried into Barracoa and there sold? 2d. Whether the right of the original owner has undergone any change?

In support of these points, the whole evidence as to the identity of the articles, has been recapitulated; and the new evidence of Mr. Bingley, (who was mate of the Sarah when captured, and who purchased and shipped, by his own shewing, all the remainder of the Sarah's cargo, that could not be stowed in the Example, and consigned it to the claimant by the Sarah) in addition to the former evidence, is contended to be fully sufficient as to the first point.

As to the second, (whether the right of the original owner has undergone any change) a variety of arguments has been used, and a number of cases produced to shew that no change of property has taken place, particularly that the decree of condemnation, which could not be procured on the former trial, but is now produced and filed, can have no operation on the present question, because that decree is dated the 13th of July, 1804, and is grounded on an ordonnance of the governor general of St. Domingo, dated the 10th of March preceding; whereas it appears from evidence before the court, that the capture was made on the 23d February, 1804, fifteen days prior to the ordonnance, for a breach of which she is condemned; and that the process of this court, under which this suit was commenced, issued in April, three months before the date of the decree of condemnation. A number of cases were produced to shew that property taken on the high seas cannot be changed but by condemnation, and that this must be done by courts of competent jurisdiction, and also that it must appear that the property was condemned either as contraband or belonging to an enemy. That in the present case the offence stated in the decree of condemnation, being for a breach of municipal law, the court could have no jurisdiction, unless seizure was made within its jurisdictional limits, and not on the high seas. For the claimant it was contended: 1st. That it was incumbent on the actor to shew a good title to the articles in the first instance. 2d. That he has been divested of it improperly, by this suit. It was contended with great earnestness that Port-au-Prince, at the time of the purchase, being possessed by the brigands, no sale by them could be legal, and, therefore, the actors having no good title in the first instance, cannot claim the justice of this court. 3d. That the capture was made in such a way as to enable the purchasers under it to hold against all persons whatsoever. It was also contended, that although the decree of condemnation recites the ordonnance of the governor general of the 10th March only, yet there were previous ordonnances of a similar nature against trade with the brigands, and that the decretal part being the substance of the decree, and that part declaring the property to be condemned, is fully sufficient; and that the reasoning on which it is founded, cannot affect the decree itself. That, let the grounds of condemnation, in a court of competent jurisdiction, be what they may, the sale is conclusive as to purchasers, even if made before condemnation. Much time was consumed in the discussion of cases relative to insurance, which differ extremely from the present; as also respecting condemnations, where the ve sel was not immediately within the jurisdiction of the court, but in another country.

I do not think it necessary at present to go over all these arguments and cases again. I have formerly decided on this point, and find the case from 4 C. Rob. Adm. 43, supports that decision. In my former decree, I examined minutely all the evidence as to the identity of the property, and if any further proof was wanting, that is fully supplied by the new witness, Mr. Bingley. The only question, therefore, now necessary for me to investigate is, whether the decree of condemnation filed in this cause, is final and conclusive, or whether this court, under the peculiar circumstances of this case, may not, if it shall be found irrelevant, say so. In a for-

[1] [Reported by Hon. Thomas Bee, District Judge.]

[2] [Reversed in Case No. 12,046. Decree of circuit court reversed by supreme court in 4 Cranch (8 U. S.) 241.]

mer decree already mentioned, I also delivered my opinion that no transfer of property could legally take place so as to divest the former owner, without a regular previous condemnation by a court having competent jurisdiction. How will this apply to the case now before me? The property libelled is forcibly taken possession of on the high seas 25th February, 1804, the sale is made soon after, and the property brought to Charleston the 22d April following, where it was attached by process of this court. No condemnation of this property took place until the 13th July following, and the only g ound stated fcr such condemnation is an ordonnance of the governor general of St. Domingo, dated the 10th March preceding, and subsequent to the capture; but it is alleged that there was proof of another ordonnance forbidding the trade, in a former cause; if so, it should have been produced again and made an exhibit, if reliance on it was contemplated. I hold myself bound to determine according to law, and the evidence produced or admitted in each case. It might be sufficient for me on this occasion, barely to refer to former decisions, where I have thought it necessary that a regular condemnation should precede a sale, unless by order of court, with consent of parties, or in case of perishable articles; but where a decree of condemnation is brought forward and relied on, and it appears on the face of it, that it is grounded ou an ordonnance, (and that a municipal one) passed subsequently to the capture, ought not the decree to be opened and examined, and can this in any manner shake the established doctrine that decrees of foreign tribunals ought to be respected? I think not. Had the property been condemned as belonging to an enemy or as contraband of war, I should have thought myself bound not to interfere, and the only remedy left to the owners would have been that pointed out by the counsel for the claimant, to apply to the court of appeal of the party, where the condemnation was made, or to the executive of the party insured. But in the present case, as the property of the actors was actually brought within their own jurisdiction long before any judicial decision had taken place elsewhere, and as the marshal of this court had the custody of it, at least three months prior to any such decision, that alone might have been good cause for ordering restitution; but when in addition to this it appears that the decree declaring this legal prize, is stated to be in pursuance of a local ordonnance, and that made subsequent to the seizure, I hold myself bound under the circumstances of this case to support the libel filed in this cause, and do order, adjudge and decree that the prayer thereof which claims restitution, be granted. As it does not appear that the claimant was any way concerned in the capture, or that there was any collusion between her and the captors, I therefore order that each party pay his own costs.

[See note to Case No. 12,047.]